**33 PAGES**

GARMAN TURNER GORDON LLP
WILLIAM M. NOALL, ESQ. (CA Bar No. 122244)
Email: wnoall@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ. (NV Bar No. 9040)
(*Admitted Pro Hac Vice*)
Email: tgray@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
Fax: 725.777.3112
*Attorneys for Debtor in Possession*
*Try Trout and Industrial, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| In re:<br><br>TRY TROUT AND INDUSTRIAL, LLC, a California limited liability company,<br><br>Debtor in Possession. | CASE No. 25-24548-B-1<br><br>DCN: GTG-6<br><br>Chapter 11<br><br>Judge: Hon. Christopher D. Jamie<br><br>Place: Courtroom 32, 6th Floor<br>Sacramento Division<br>501 I Street<br>Sacramento, CA 95814 |

**DEBTOR'S PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

**1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME** .................................................................................................. **1**

   1.1.   Definitions. ................................................................................................ 1

**2. TREATMENT OF UNCLASSIFIED CLAIMS** ................................................ **11**

   2.1.   General. .................................................................................................... 11

   2.2.   Treatment of Administrative Claims. ....................................................... 11

   2.3.   Treatment of Priority Tax Claims. ........................................................... 11

   2.4.   Requests for Payment. ............................................................................. 12

**3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY SECURITIES** ............ **12**

   3.1.   Determination of Claims and Equity Securities Within Classes. .............. 12

   3.2.   Summary of Classification. ...................................................................... 12

**4. TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN** ........................ **12**

   4.1.   Class 1 – Builders Capital Claim. ........................................................... 12

   4.2.   Class 2 – TDA Secured Claim. ............................................................... 13

   4.3.   Class 3 – Secured Tax Claims.. .............................................................. 13

   4.4.   Class 4 – Priority Unsecured Claims. ...................................................... 13

   4.5.   Class 5 – TDA Unsecured Claim and Class 6 – General Unsecured Claims. ............ 13

   4.6.   Class 7 – Equity Securities. .................................................................... 14

**5. MEANS FOR IMPLEMENTATION OF PLAN** ............................................... **14**

   5.1.   Plan Implementation Occurring on the Effective Date. ............................. 14

   5.2.   No Corporate Or Governance Action Required. ....................................... 16

   5.3.   Filing with California Secretary of State. ................................................. 16

**6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................ **16**

   6.1.   Executory Contracts. .............................................................................. 16

   6.2.   Approval of Assumption or Rejection. ..................................................... 16

   6.3.   Cure of Defaults. .................................................................................... 16

6.4. Objection to Cure Amounts. ...................................................................... 17

6.5. Confirmation Order. .......................................................................................... 17

6.6. Rejection Damages Claim Bar Date. ............................................................ 17

**7. MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN .................. 17**

7.1. Distributions. ...................................................................................................... 17

7.2. Reserve. ................................................................................................................ 17

7.3. Statements. ........................................................................................................... 17

7.4. Further Authorization.. ..................................................................................... 17

**8. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE
DATE ........................................................................................................................ 18**

8.1. Conditions to Confirmation. ........................................................................... 18

8.2. Conditions to Effectiveness. ........................................................................... 18

8.3. Waiver of Conditions. ....................................................................................... 18

**9. TITLE TO PROPERTY; DISCHARGE; INJUNCTION ............................................. 18**

9.1. Vesting of the Assets. ....................................................................................... 18

9.2. Preservation of Litigation Claims. ............................................................... 18

9.3. Discharge. ............................................................................................................. 19

9.4. Compromise and Settlement. .......................................................................... 19

9.5. Injunction. ............................................................................................................ 19

9.6. Exculpation. ......................................................................................................... 19

9.7. Preservation of Litigation Claims. ............................................................... 20

**10. RETENTION OF JURISDICTION ............................................................................... 20**

10.1. Jurisdiction. ......................................................................................................... 20

10.2. No Waiver. ............................................................................................................ 21

**11. MODIFICATION AND AMENDMENT OF PLAN .................................................... 21**

11.1. Modification and Amendment. ...................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.     **MISCELLANEOUS** ......................................................................................... **22**

12.1.     Objections to Claims and Disallowed Claims. ................................................ 22

12.2.     Disputed Claims Reserve. ............................................................................ 22

12.3.     Effectuating Documents; Further Transactions; Timing. ................................ 22

12.4.     Exemption from Transfer Taxes. .................................................................. 23

12.5.     Revocation or Withdrawal of this Plan. ......................................................... 23

12.6.     Binding Effect. ............................................................................................. 23

12.7.     Governing Law. ........................................................................................... 23

12.8.     Modification of Payment Terms. ................................................................... 23

12.9.     Delivery of Distributions; Undeliverable Distributions. ................................. 23

12.10.     Set Offs. ...................................................................................................... 24

12.11.     Notices. ....................................................................................................... 25

12.12.     Severability. ................................................................................................ 25

12.13.     Withholding and Reporting Requirements. .................................................... 25

12.14.     Post-Confirmation Reporting. ...................................................................... 26

12.15.     Cramdown. .................................................................................................. 26

12.16.     Quarterly Fees. ............................................................................................ 26

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Try Trout and Industrial, LLC, debtor in possession (the "<u>Debtor</u>"), proposes this plan of reorganization (the "<u>Plan</u>") for the resolution of Debtor's outstanding Claims and Equity Securities (as these terms are defined herein). All Creditors, Equity Security Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtor's history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against the Debtor and Debtor's Equity Security Holders are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in <u>Article 11</u> to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1.    Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this <u>Article 1</u>. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following terms in bold have the meanings set for the below.

**1.1.1.    Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (ii) all Taxes arising between the Petition Date and the Effective Date, including those Taxes for which returns are not yet due; and (iii) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed pursuant to Sections 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an "<u>Administrative Claim</u>" under this paragraph.

**1.1.2.    Administrative Claim Bar Date.** Unless an alternate date is set by Final Order of the Bankruptcy Court, the first Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.3.    Affiliate.** This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.4.    Allowed Administrative Claim.** An Administrative Claim as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect which prohibits any such payment.

**1.1.5. Allowed Claim.** A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant: (w) to this Plan or Final Order of the Bankruptcy Court, (x) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (y) to any stipulation with Debtor executed on or after the Confirmation Date and approved by the Bankruptcy Court, or (z) to any contract, instrument, or other agreement entered into or assumed in connection herewith; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtor; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by Debtor in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii), no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order Allowing all or a portion of such Claim.

**1.1.6. Allowed Equity Security.** An Equity Security as of the Record Date that: (i) is allowed pursuant to this Plan; (ii) is not disputed by Debtor; or (iii) if a Disputed Equity Security, which Equity Security has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.7. Assets.** All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date.

**1.1.8. Avoidance Actions.** All avoidance, recovery, subordination, and other similar state and federal actions and causes of action preserved for the Estate under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.9. Ballot.** The form of ballot or ballots that will be distributed with the Disclosure Statement to Holders of Claims entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.1.10. Bankruptcy Code.** The Bankruptcy Reform Act of 1978, Title 11, United States Code, as applicable to the Chapter 11 Case, as now in effect or hereafter amended, 11 U.S.C. §§ 101, *et seq.*

**1.1.11. Bankruptcy Court.** The United States Bankruptcy Court for the Eastern District of California, Sacramento Division, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Orders of the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. § 151.

**1.1.12. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Case, as now in effect or hereinafter amended.

**1.1.13. Bar Date.** The date or dates established by the Bankruptcy Court, the Bankruptcy Code, and/or the Bankruptcy Rules for the filing of proofs of Claim for all Creditors, excepting therefrom, Administrative Claims.

**1.1.14.　BC Stipulation.**　The *Stipulation and Order Regarding Payment of Allowed Contractual Compensation and Reimbursement of Expenses of Certain Court Appointed Real Estate Brokers* between Debtor and Builders Capital, which stipulation shall be approved by entry of an order of the Bankruptcy Court.

**1.1.15.　Brokers.**　Together, Keen-Summit Capital Partners LLC and Berkadia Real Estate Advisors Inc.

**1.1.16.　Broker Agreement.**　The Retention Agreement by and between Debtor and the Brokers, which shall be approved by entry of an order of the Bankruptcy Court.

**1.1.17.　Brokers Compensation.**　The fees and reimbursement of expenses due and payable to the Brokers pursuant to the terms of Sections III and IV of the Broker Agreement.

**1.1.18.　Builders Capital.**　Builders Capital Finance, LLC.

**1.1.19.　Builders Capital Claim.**　The Secured Claim held by Builders Capital pursuant to the Builders Capital Loan Documents, which Claim is secured by a first priority deed of trust Lien on the Properties.

**1.1.20.　Builders Capital Loan Documents.**　The Loan Agreement dated September 21, 2023, by and between Debtor, as borrower, and Construction Loan Services II, LLC, as lender; the Promissory Note dated September 21, 2023, in the amount of $19,126,568.83, in favor of Construction Loan Services II, LLC, as lender; the Deed of Trust, Security Agreement, Assignment of Leases and Rents, Assignment of Contracts and Plans, and Fixture Filing dated September 21, 2023, by Debtor, as trustor, and Construction Loan Services II, LLC, as beneficiary, recorded in the official records of the County Recorder of Nevada County as Instrument Number 20230013621; the Unconditional Guaranty between Randolph F. Lamb, as guarantor, and Construction Loan Services II, LLC, as lender; the Subordination and Intercreditor Agreement dated September 21, 2023, between Construction Loan Services II, LLC and TDA; the assignment documents from Construction Loan Services II, LLC to Builders Capital; and all related loan documents and all amendments, modifications, or restatements to any of the foregoing documents.

**1.1.21.　Business Day.**　Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.22.　Cash.**　The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.1.23.　Causes of Action.**　All actions, causes of action, Litigation Claims, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case.

**1.1.24.    Chapter 11 Case.**  The case pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code involving Debtor, having case number 25-24548-B-1, including all adversary proceedings pending in connection therewith.

**1.1.25.    Claim.**  Any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.26.    Class.**  A category of Holders of Claims or Equity Securities as classified in this Plan.

**1.1.27.    Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.1.28.    Confirmation.**  The entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.29.    Confirmation Date.**  The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.30.    Confirmation Hearing.**  The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing or by a subsequent order of the Bankruptcy Court.

**1.1.31.    Confirmation Order.**  The order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.32.    Contingent Claim.**  A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.33.    Credit Bid Transaction.**  The sale or transfer of title of one or more Properties pursuant to Section 363 of the Bankruptcy Code to Builders Capital pursuant to a credit bid as set forth in the BC Stipulation.

**1.1.34.    Creditor.**  Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.35.    Creekside Village.**  Debtor's property located in Truckee, Nevada County, California, and situated within the confines of assessor's parcel 019-421-014-000 with the working address of 11158 Church Street, Truckee, Nevada County, California, 96161.  The subject property contains 5.44 acres of vacant land proposed for the development of 49 single-family homes and attached townhomes.

**1.1.36.** **Cure.** The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such executory contract or unexpired lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from a debtor's failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the Holder of such a claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon Debtor's counsel on or before such date ordered by the Bankruptcy Court for the filing of objections to the disclosure statement.

**1.1.37.** **Debtor.** Try Trout and Industrial, LLC, the debtor in the captioned Chapter 11 Case pursuant to Section 1108 of the Bankruptcy Code.

**1.1.38.** **Disclosure Statement.** The disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.39.** **Disputed Claim or Disputed Equity Security.** A Claim or Equity Security or any portion thereof that is: (i) subject to timely objection interposed by Debtor or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection has not been withdrawn or determined by Final Order; or (ii) a Claim that is listed by Debtor as disputed, unliquidated, or contingent in the Schedules, with respect to which no proof of claim has been timely filed; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code. The term "Disputed," when used to modify a reference in this Plan to any Claim or Equity Security (or Class of Claims or Equity Security), shall mean a Claim or Equity Security (or any Claim or Equity Security in such Class) that is a Disputed Claim or Disputed Equity Security. In the event there is a dispute as to classification or priority of a Claim or Equity Security, it shall be considered a Disputed Claim or Disputed Equity Security in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**1.1.40.** **Disputed Claim Reserve.** A reserve established by Reorganized Debtor to hold in a separate account Cash equal to the aggregate amount that would have been distributed on the Effective Date in accordance with the terms of this Plan on account of a Disputed Claim, plus interest and fees required under the Plan. With respect to any Secured Claim for which there is contractual interest or statutory interest, six (6) months of interest shall also be funded into the Disputed Claim Reserve for any such Disputed Secured Claim. The funds in the Disputed Claim Reserve may only be disbursed upon entry of an order of the Bankruptcy Court resolving a Disputed Claim and authorizing payment from the Disputed Claim Reserve. The Disputed Claim Reserve shall terminate upon all Disputed Claims being fully resolved and paid pursuant to the

terms of the Plan to the extent they become Allowed Claims and any remaining funds distributed to Reorganized Debtor.

**1.1.41. Distribution.** Any distribution of Cash on account of an Allowed Claim by Debtor or Reorganized Debtor, whether directly or through a title company upon the closing of an Effectuating Transaction.

**1.1.42. Distribution Funds.** Shall mean the Cash contributed to fund the Disputed Claims Reserve and to make the Effective Date Distributions to Allowed Claims and Allowed unclassified Claims in accordance with this Plan.

**1.1.43. Effective Date.** The first (1st) Business Day on which all of the conditions set forth in <u>Article 8</u> to this Plan have been satisfied or waived. It is intended that the Effective Date shall be the date on which the Effectuating Transaction closes.

**1.1.44. Effectuating Transaction.** A Sale Transaction or a Restructuring Transaction.

**1.1.45. Equity Security.** An equity security as the term is defined in Section 101(16) of the Bankruptcy Code and includes the membership interests in Debtor and any warrants, options, redemption rights, dividend rights, liquidation preferences, rights to purchase any such Equity Security, or any other rights related thereto.

**1.1.46. Estate.** The Estate created for Debtor in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

**1.1.47. Executory Contract.** A contract to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

**1.1.48. Exhibits and Plan Schedules.** All exhibits and schedules attached to this Plan or filed in a Plan supplement are incorporated into and are a part of this Plan as if set forth in full herein.

**1.1.49. Final Decree.** Pursuant to Rule 3022 of the Bankruptcy Rules, upon the administration of the Estate and effectuation of all Distributions under this Plan, the Final Order of the Bankruptcy Court closing the Chapter 11 Case.

**1.1.50. Final Order.** An order, judgment, or other decree of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, reconsidered, stayed, modified, or amended, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; (ii) any appeal taken or petition for certiorari or request for reconsideration or further review or rehearing filed: (a) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought; or (b) has not yet been resolved by such highest court, but such order has not been stayed pending appeal. Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

the first (1st) Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order was accompanied by a stay pending appeal.

**1.1.51. Final Report.** The final report filed by Debtor in accordance with Sections 1106(a)(1) and 704(a)(9) of the Bankruptcy Code.

**1.1.52. General Unsecured Claim.** A Claim that is not secured by a Lien or other charge against or interest in property in which the Estate has an interest and is not (i) an Administrative Claim, (ii) a Priority Tax Claim, or (iii) a Priority Unsecured Claim. General Unsecured Claims shall include all Claims arising under Section 502(g) of the Bankruptcy Code.

**1.1.53. Heritage Village.** Debtor's property located in Truckee, Nevada County, California, and situated within the confines of four assessor's parcels identified as 019-421-011-000, 019-421-012-000, 019-421-021-000 and 019-421-022-000, which contain a total land area of 7.93 acres. The site is proposed for the development of 108 condominium units over ground floor retail to be identified as Heritage Village.

**1.1.54. Holder.** A Person holding an Equity Security or Claim.

**1.1.55. Impaired.** Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.56. Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.57. Litigation Claims.** All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person, including but not limited to, those listed on <u>Schedule 1.1.57</u> hereto. Failure to list a Litigation Claim on <u>Schedule 1.1.57</u> shall not constitute a waiver or release by Debtor and/or the Estate of such Litigation Claim.

**1.1.58. Operating Reserve**. The sum of $100,000 maintained by the Reorganized Debtor to pay expenses and fees incurred in the ordinary course prosecuting Avoidance Actions and Litigation Claims, resolving Disputed Claims, and liquidating Debtor's Assets to the extent necessary to make Distributions due under the Plan.

**1.1.59. Person.** An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof or any other entity.

**1.1.60. Petition Date.** August 27, 2025, the date on which voluntary Chapter 11 petition was filed by Debtor, thereby commencing the Chapter 11 Case.

**1.1.61. Plan.** This plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.62. Plan Interest Rate.** The federal judgment rate of interest as of the Effective Date with respect to any Secured Claim to which no contract or statutory rate of interest applies and all unsecured Claims, or such other rate as determined to be appropriate by the Court at the Confirmation Hearing with respect to any Claim or Class of Claims.

**1.1.63. Priority Tax Claims.** Any and all governmental unit Claims accorded priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**1.1.64. Priority Unsecured Claims.** Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code except under Section 507(a)(2) and Section 507(a)(3).

**1.1.65. Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1102 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 363(b) or 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.66. Proof of Claim.** A proof of Claim filed by a Creditor in accordance with Section 501 of the Bankruptcy Code and Bankruptcy Rule 3001.

**1.1.67. Properties.** Together, Heritage Village and Creekside Village.

**1.1.68. Pro Rata.** The ratio of an Allowed Claim or Allowed Equity Security in a particular class to the aggregate amount of all such Allowed Claims or Allowed Equity Securities in any such Class; except that for the treatment of Classes 5 and 6, Pro Rata shall refer to the ratio of Allowed Claim in Classes 5 and 6, collectively.

**1.1.69. Record Date.** The date of entry of the order approving the Disclosure Statement.

**1.1.70. Reinstated or Reinstatement.** These terms shall mean: (i) leaving unaltered the legal, equitable, and contract rights of the Holder of a Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contract provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contract provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contract rights to which such Claim entitles the Holder of such Claim; provided, however, that any contract right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.71. Rejection Damages Claim.** A Claim arising from Debtor's rejection of an Executory Contract or Unexpired Lease.

**1.1.72. Rejection Damages Claim Bar Date.** The end of the first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.73. Remaining Cash.** The Cash held by the Reorganized Debtor excluding the Disputed Claim Reserve and the Operating Reserve.

**1.1.74. Reorganized Debtor.** Debtor as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.75. Reorganized Debtor Organizational Documents.** The organizational documents for the Reorganized Debtor, which shall include any amendments to the articles of organization, the operating agreement, and all related corporate documents.

**1.1.76. Restructuring Transaction.** Any transaction, other than a Sale Transaction, involving the Debtor's pecuniary interests arising from or related or pertaining to (i) the restructuring of all or a portion of the Debtor's Secured Claims, and/or (ii) the raising of debt and/or equity capital and/or the closing of a joint-venture in order to: (a) refinance the Properties, (b) to recapitalize Debtor or an entity owned or controlled by Debtor, (c) to buy all or a portion of the Secured Claims currently encumbering the Properties, and/or (d) to an alternative transaction in an amount sufficient to fund this Plan. For the avoidance of doubt, completion of a Restructuring Transaction requires, subject to <u>Section 12.8</u>, payment to all Secured Claims with Liens on any Properties subject to the Restructuring Transaction in an amount equal to such Secured Creditors' Allowed Secured Claims calculated under Section 506 of the Bankruptcy Code, unless otherwise agreed by the Secured Creditor, and without reduction for the Broker's Restructuring Transaction Fee (as defined in the Broker Agreement). The Restructuring Transaction shall comply with the requirements of the Bankruptcy Code and shall be effectuated pursuant to Section 363 of the Bankruptcy Code and one or more orders of the Bankruptcy Court authorizing the transaction.

**1.1.77. Rules of Interpretation.** For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

**1.1.78. Sale Transaction.** The sale or transfer of title of one or more of the Properties pursuant to Section 363 of the Bankruptcy Code, solely excluding a Credit Bid Transaction. The Sale Transaction shall comply with the requirements of Section 363 of the

Bankruptcy Code and shall be effectuated pursuant to one or more orders of the Bankruptcy Court authorizing the sale procedures and the terms of the sale.

**1.1.79.   Secured Claim.**   A Claim that is secured by an unavoidable Lien against property of the Estate to the extent of the value of any interest in such property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.80.   Secured Tax Claim.**   A Secured Claim held by a governmental unit for unpaid Taxes.

**1.1.81.   Schedules.**  The schedules of assets and liabilities and any amendments thereto filed by Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.82.   Tax Code.**  The Internal Revenue Code of 1986, as amended.

**1.1.83.   Taxes.**     All income, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.1.84.    TDA.**  Truckee Development Associates, LLC.

**1.1.85.    TDA Claim.**   The Claim held by TDA pursuant to the TDA Loan Documents, which Claim is secured by a second-position deed of trust Lien on the Properties.

**1.1.86.    TDA Loan Documents.**  The Loan Agreement dated September 26, 2023, by and between Debtor, as borrower, and TDA, as lender; the Purchase Money Promissory Note dated September 26, 2023, in the amount of $5,000,000, in favor of TDA, as lender; the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 26, 2023, by Debtor, as trustor, and TDA, as beneficiary, recorded in the official records of the County Recorder of Nevada County as Instrument Number 20230013622; the Continuing Guaranty between Randolph F. Lamb, as guarantor, and TDA, as lender; the Subordination and Intercreditor Agreement dated September 21, 2023, between Construction Loan Services II, LLC and TDA, and all related loan documents and all amendments, modifications, or restatements to any of the foregoing documents.

**1.1.87.    TDA Secured Claim.**  The Secured Claim portion of the TDA Claim.

**1.1.88.    TDA Unsecured Claim.**   The unsecured Claim portion, if any, of the TDA Claim.

**1.1.89.    Unexpired Lease.**  A lease of real property or personal property to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code**.**

**1.1.90.   Unimpaired.**   This term has the meaning as set forth in Section 1124 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

## 2.   TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.   General.**   Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against Debtor set forth in this <u>Article 2</u> are not classified within any Class.  The Holders of such Claims are not entitled to vote on this Plan.  The treatment of the Claims set forth in this <u>Article 2</u> is consistent with the requirements of Section 1129(a)(9) of the Bankruptcy Code.

**2.2.   Treatment of Administrative Claims.**   Other than the Broker Compensation, each Allowed Administrative Claim shall be paid upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the fourteenth (14th) day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and Debtor shall agree upon.  For the avoidance of doubt, trade accounts payable, accrued expenses, and other liabilities of Debtor arising in the ordinary course of business after the Petition Date will continue to be paid in the ordinary course of business from Cash on hand based on the terms of the agreement with each respective vendor.  The Broker Compensation shall be paid in accordance with the terms of the Broker Agreement pursuant to the Bankruptcy Court order approving the Broker Agreement.

**2.3.   Treatment of Priority Tax Claims.**   Each Allowed Priority Tax Claim, if any, shall be paid in full in Cash by Debtor, as follows:

(i)    On the fifteenth (15th) Business Day after the Disputed Claim Reserve is funded, the Reorganized Debtor shall pay each Holder of an Allowed Priority Tax Claim on such date the lesser of: (i) their Pro Rata share of the Remaining Cash on such date; and (ii) the outstanding, unpaid balance of their Allowed Priority Tax Claim.

(ii)   Within fifteen (15) days after all Disputed Claims having been resolved, the Reorganized Debtor shall pay each Holder of an Allowed Priority Tax Claim the lesser of: (i) their Pro Rata share of the Remaining Cash and the Disputed Claim Reserve; and (ii) the outstanding, unpaid balance of their Allowed Priority Tax Claims, plus interest at the Plan Interest Rate, which Distributions shall continue on the fifteenth (15) day after the end of each calendar quarter until all Allowed Priority Tax Claims have been paid in full.

(iii)  No Allowed Priority Tax Claim will be paid later than five years after the Petition Date.

(iv)   Until the Allowed Priority Tax Claim is paid in full, the unpaid balance shall accrue statutory interest from the Effective Date fixed at the applicable federal or state statutory rate in effect with respect to such Allowed Priority Tax Claim on the Petition Date.

**2.4.** **Requests for Payment.** All requests for payment of Administrative Claims against Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against Debtor. All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and Debtor may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

## 3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY SECURITIES

**3.1.** **Determination of Claims and Equity Securities Within Classes.** Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Securities (except unclassified Claims) are placed in the Classes described below. A Claim or Equity Security is classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Security qualifies within the description of such other Classes. A Claim or Equity Security is also classified in a particular Class only to the extent that such Claim or Equity Security is an Allowed Claim or Allowed Equity Security in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under this Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of Debtor regarding such Claims, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

**3.2.** **Summary of Classification.**

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Builders Capital Claim | Impaired; Solicitation required. |
| Class 2 | TDA Secured Claim | Impaired; Solicitation required. |
| Class 3 | Secured Tax Claims | Impaired; Solicitation required. |
| Class 4 | Priority Unsecured Claims | Impaired; Solicitation required. |
| Class 5 | TDA Unsecured Claim | Impaired; Solicitation required. |
| Class 6 | General Unsecured Claims | Impaired; Solicitation required. |
| Class 7 | Equity Securities | Impaired; Solicitation required. |

## 4. TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN

**4.1.** **Class 1 – Builders Capital Claim.** Class 1 consists of the Allowed Builders Capital Claim. In full and final satisfaction of such Allowed Claim, the Allowed Builders Capital Claim in Class 1 shall be paid in full on the Effective Date through the closing of the Effectuating Transaction.

Class 1 is Impaired under this Plan and the Holder of an Allowed Class 1 Claim is entitled to vote on this Plan.

**4.2.    Class 2 – TDA Secured Claim.**  Class 2 consists of the Allowed TDA Secured Claim.  In full and final satisfaction of such Allowed Claim, the Allowed TDA Secured Claim in Class 2 shall be paid in full on the Effective Date through the closing of the Effectuating Transaction.

Class 2 is Impaired under this Plan and the Holder of an Allowed Class 2 Claim is entitled to vote on this Plan.

**4.3.    Class 3 – Secured Tax Claims.**  Class 3 consists of the Secured Tax Claims.  In full and final satisfaction of such Allowed Claim, the Allowed Secured Tax Claims in Class 3 shall be paid in full on the Effective Date through the closing of the Effectuating Transaction.

Class 3 is Impaired under this Plan and the Holders of the Class 3 Secured Tax Claims are entitled to vote on this Plan.

**4.4.    Class 4 – Priority Unsecured Claims.**  Class 4 is comprised of the Allowed Priority Unsecured Claims.  In full and final satisfaction of such Allowed Claims, the Allowed Priority Unsecured Claims in Class 4, if any, shall be treated as follows:

(v)    On the fifteenth (15th) Business Day after the Disputed Claim Reserve is funded and the Allowed Priority Tax Claims are paid in full, the Reorganized Debtor shall pay each Holder of an Allowed Priority Unsecured Claim on such date the lesser of: (i) their Pro Rata share of the Remaining Cash on such date; and (ii) the outstanding, unpaid balance of their Allowed Priority Unsecured Claim.

(vi)    Within fifteen (15) days after all Disputed Claims having been resolved and all Allowed Priority Tax Claims being paid in full, the Reorganized Debtor shall pay each Holder of an Allowed Priority Unsecured Claim the lesser of: (i) their Pro Rata share of the Remaining Cash and the Disputed Claim Reserve; and (ii) the outstanding, unpaid balance of their Allowed Priority Claims, plus interest at the Plan Interest Rate, which Distributions shall continue on the fifteenth (15) day after the end of each calendar quarter until all Allowed Class 4 Claims have been paid in full.

Class 4 is Impaired under this Plan and the Holders of the Class 4 Allowed Priority Unsecured Claims are entitled to vote on this Plan.

**4.5.    Class 5 – TDA Unsecured Claim and Class 6 – General Unsecured Claims.**  Class 5 is comprised of the Allowed TDA Unsecured Claim, if any.  Class 6 is comprised of the Allowed General Unsecured Claims.  Because TDA has sued and obtained relief against the guarantor under the TDA Loan Documents, the TDA Unsecured Claim (to the extent one exists) is separately classified from the Class 6 General Unsecured Claims.  However, the Class 5 and Class 6 Claims shall receive the same treatment under this Plan.

Except to the extent that a Holder of an Allowed Class 5 or Class 6 Claim agrees to less

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

favorable treatment, each Holder of an Allowed Class 5 TDA Unsecured Claim and/or an Allowed Class 6 General Unsecured Claim, shall, in full and final satisfaction of such Allowed Claim, be restructured and treated as follows:

(vii)     On the fifteenth (15th) Business Day after the Disputed Claim Reserve is funded and all Allowed Priority Tax Claims and Allowed Class 4 Priority Unsecured Claims are paid in full, the Reorganized Debtor shall pay each Holder of an Allowed Class 5 or Class 6 Claim on such date, the lesser of: (i) their Pro Rata share of the Remaining Cash on such date; and (ii) the outstanding, unpaid balance of their Allowed Claim.

(viii)     Within fifteen (15) days after all Disputed Claims having been resolved and all Allowed Priority Tax Claims and Allowed Class 4 Priority Unsecured Claims are paid in full, the Reorganized Debtor shall pay each Holder of an Allowed Class 5 or Class 6 Claim on such date, the lesser of: (i) their Pro Rata share of the Remaining Cash and the Disputed Claim Reserve; and (ii) the outstanding, unpaid balance of their Allowed Claims, plus interest at the Plan Interest Rate, which Distributions shall continue on the fifteenth (15) day after the end of each calendar quarter until all Allowed Class 5 and 6 Claims have been paid in full.

(ix)     Prior to any Distribution being made on account of Class 7 Equity Securities, the Allowed Class 5 TDA Unsecured Claim and all Allowed Class 6 General Unsecured Claims shall have been paid in full with interest at the Plan Interest Rate.

Classes 5 and 6 are Impaired under this Plan and the Holders of the Class 5 TDA Unsecured Claim and the Class 6 Allowed General Unsecured Claims are entitled to vote on this Plan.

**4.6.     Class 7 – Equity Securities.**  On the Effective Date, the Holders of Equity Securities of Debtor shall retain all of their legal interests.  All Allowed Claims shall have been paid in full prior to any Equity Securities receiving any payments from the Reorganized Debtor, whether by distribution or otherwise.

Class 7 Equity Securities are Impaired under this Plan and are therefore entitled to vote on this Plan.

# 5.   MEANS FOR IMPLEMENTATION OF PLAN

**5.1.     Plan Implementation Occurring on the Effective Date.**  On the Effective Date, except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, the following events shall occur:

**5.1.1.   Reorganized Debtor.**  On the Effective Date, Debtor shall be reorganized pursuant to the terms of this Plan and shall continue to exist as a separate entity in accordance with applicable law.  The Reorganized Debtor shall be managed by Lamb Partners, LLC, Debtor's current manager.

**5.1.2. Articles of Organization and Operating Agreement.** Debtor's existing articles of organization and operating agreement (as amended, supplemented, or modified) will continue in effect for Reorganized Debtor following the Effective Date, except to the extent that such documents are amended in conformance with this Plan or by proper corporate action after the Effective Date. Such amendments shall include a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code.

**5.1.3. Vesting of Assets in Reorganized Debtor.** On the Effective Date, except for the Assets that are transferred in accordance with the terms of an Effectuating Transaction, the Debtor's Assets shall be transferred to, and vest in, the Reorganized Debtor free and clear of all Liens, Claims, and Equity Securities.

**5.1.4. Effectuating Transaction.** This Plan is intended to effectuate the terms of the BC Stipulation through the closing of either a Sale Transaction or a Restructuring Transaction.

**5.1.4.1.** On or before April 6, 2026, Debtor shall have entered into either (i) a binding asset purchase agreement for a Sale Transaction, or (ii) one or more binding agreements whereby Debtor will complete a Restructuring Transaction.

**5.1.4.2.** If Debtor does not satisfy the conditions of Section 5.1.4.1 of this Plan on or before April 6, 2026, then Debtor shall: (i) effectuate the Credit Bid Transaction, or (ii) obtain an order of the Bankruptcy Court extending the April 6, 2026 deadline.

**5.1.4.3.** On or before June 4, 2026, Debtor shall: (i) have closed a sale or refinance of 100% of the Properties in a manner consistent with the BC Stipulation; (ii) effectuate the Credit Bid Transaction; or (iii) obtain an order of the Bankruptcy Court extending the June 4, 2026 deadline.

**5.1.4.4.** In a Restructuring Transaction, the proceeds of the transaction shall be in an amount sufficient to pay the Brokers Fee and all Allowed Secured Claims in full.

**5.1.5. Credit Bid Transaction.** In the event of a Credit Bid Transaction, Debtor shall effectuate the Credit Bid Transaction pursuant to Section 363 and in accordance with the BC Stipulation and the Effective Date will not occur. Debtor will promptly seek appropriate relief and that the Plan will be deemed withdrawn or of no further force and effect.

**5.1.6. Notice of Effectiveness.** When the steps contemplated by Section 8 have been completed, Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and potential Holders of Administrative Claims reasonably known to Debtor (whether or not disputed), a Notice of Effective Date of Plan, which shall include a notice of the Administrative Claim Bar Date.

**5.1.7. Final Decree.** On or before the fifteenth (15th) day after all of the Effective Date Distributions required by Sections 2 through 4 of the Plan have been tendered and all contested matters have been resolved, Reorganized Debtor shall file a motion to close the Chapter 11 Case. Prior to the hearing on the motion seeking to close the Chapter 11 Case, the Final Report shall be filed.

**5.2.** **No Corporate Or Governance Action Required.** As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving corporate action to be taken by or required of Debtor or Reorganized Debtor, as applicable, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of Debtor or Reorganized Debtor.

**5.3.** **Filing with California Secretary of State.** To the extent required by the California Corporations Code, on or as soon as reasonably practicable after the Effective Date, a certified copy of this Plan and the Confirmation Order shall be filed with the California Secretary of State. From the Confirmation Date until the Effective Date, Debtor is authorized and directed to take any action or carry out any proceeding necessary to effectuate this Plan pursuant to applicable California law.

## 6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.** **Executory Contracts**. Except for Executory Contracts and Unexpired Leases assumed pursuant to prior order of the Bankruptcy Court or set forth on the schedule of Assumed Executed Contracts and Unexpired Leases attached as <u>Schedule 6.1</u> hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by Debtor on the Effective Date.

**6.2.** **Approval of Assumption or Rejection**. Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code Section 365, of the rejection by Debtor of each Executory Contract and Unexpired Lease to which any of Debtor is a party that is not listed on <u>Schedule 6.1</u>, not otherwise provided for in this Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) rejection by any of Debtor of each Executory Contract and Unexpired Lease to which any of Debtor is a party that is not listed on <u>Schedule 6.1</u>. Upon the Effective Date, each counter party to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption. To the extent applicable, all Executory Contracts or Unexpired Leases of Debtor assumed pursuant to this <u>Article 6</u> shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of this Plan.

**6.3.** **Cure of Defaults**. Debtor shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to <u>Section 6.1</u> of this Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by Debtor, and after the Effective Date, the Reorganized Debtor; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to this Plan in

accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

**6.4.    Objection to Cure Amounts**.  Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount determined by Debtor to be due and owing must file and serve an objection on Debtor's counsel no later than thirty (30) days after the Effective Date. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts paid by Debtor in accordance with <u>Section 6.3</u> of this Plan.  If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of Debtor to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**6.5.    Confirmation Order**.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions described in this <u>Article 6</u> pursuant to Sections 1123 and 365 of the Bankruptcy Code as of the Effective Date.  Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption by Debtor.

**6.6.    Rejection Damages Claim Bar Date**.  All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease pursuant to this Plan shall be filed no later than Rejection Damages Claim Bar Date.  Any Claim not filed within such time shall be forever barred.

## 7.    MANNER OF DISTRIBUTION OF PROPERTY UNDER THIS PLAN

**7.1.    Distributions**.  The Reorganized Debtor shall be responsible for making, or causing to be made, the Distributions required to be made on and after the Effective Date pursuant to the terms of this Plan.

**7.2.    Reserve**.  Reorganized Debtor shall establish and maintain the Disputed Claim Reserve.

**7.3.    Statements**.  Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed Claims as of the Effective Date for purposes of mailing Distributions to them.  Reorganized Debtor may rely on the name and address set forth in Debtor's Schedules and/or Proofs of Claim and the ledger and records regarding Holders of Equity Securities as of the Record Date as being true and correct unless and until notified otherwise in writing. Debtor shall file all tax returns and other filings with governmental authorities on behalf of Debtor and the Assets it holds.

**7.4.    Further Authorization.**  Debtor or Reorganized Debtor, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to, the provisions of this Plan.

# 8.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**8.1.    Conditions to Confirmation**.    The following are conditions precedent to confirmation of the Plan:

**8.1.1.**  The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to Debtor.

**8.2.    Conditions to Effectiveness**. The following are conditions precedent to the occurrence of the Effective Date:

**8.2.1.**  The Confirmation Order shall be a Final Order, except that Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order;

**8.2.2.**  No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**8.2.3.**  All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonable acceptable to Debtor; and

**8.2.4.**    Debtor shall have obtained all required orders of the Bankruptcy Court, finalized and executed all necessary documents, and taken all other required actions to close a Restructuring Transaction or a Sale Transaction on the Effective Date.

**8.3.    Waiver of Conditions.**  Debtor may waive any and all of the other conditions to effectiveness set forth in the Plan and specifically <u>Sections 8.1 and 8.2</u> above without leave or order of the Bankruptcy Court and without any formal action; provided, however, in the event of a Credit Bid Transaction, the Effective Date will not occur.

# 9.  TITLE TO PROPERTY; DISCHARGE; INJUNCTION

**9.1.    Vesting of the Assets.**  Subject to the provisions of this Plan and as permitted by Section 1123(a)(5)(B) of the Bankruptcy Code, on the Effective Date, except to the extent certain Assets are transferred in accordance with the terms of an Effectuating Transaction, the Debtor's Assets shall be transferred to, and vest in, Reorganized Debtor free and clear of all Liens and Claims.

On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

**9.2.    Preservation of Litigation Claims**.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided herein, all Avoidance Actions and Litigation Claims shall be transferred to, and vested in, the Reorganized Debtor.  The Reorganized

Debtor shall have the exclusive right to sue on, settle, or compromise any and all Avoidance Actions and Litigation Claims.

**9.3.     Discharge**.  On the Effective Date, unless otherwise expressly provided in the Plan and the Confirmation Order, Debtor shall be discharged from any and all Claims to the fullest extent provided in the Bankruptcy Code, including Sections 524 and 1141.  All consideration distributed under this Plan or the Confirmation Order shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of all Claims of any kind or nature whatsoever against Debtor or any of its Assets or properties, and regardless of whether any property shall have been distributed, transferred, or retained pursuant to this Plan on account of such Claims.  Except as otherwise expressly provided by this Plan and the Confirmation Order, upon the Effective Date, Debtor shall be deemed discharged and released under and to the fullest extent provided under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Nothing herein shall be construed as effectuating a release of any Allowed Administrative Claims.

**9.4.     Compromise and Settlement.**   The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in this Plan are (i) in the best interests of Debtor, its Estate, and all Holders of Claims and Equity Securities, (ii) fair, equitable and reasonable, (iii) made in good faith, and (iv) approved by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**9.5.     Injunction**.  From and after the Effective Date, and except as provided in this Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim or Equity Security or other right of an Equity Security Holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such Claims or terminated Equity Securities or rights: (i) commencing or continuing in any manner any action or other proceeding against Debtor, Reorganized Debtor, or their respective property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Debtor, Reorganized Debtor, or their respective property; (iii) creating, perfecting, or enforcing any Lien or encumbrance against Debtor, Reorganized Debtor, or their respective property; (iv) asserting a right of subrogation of any kind against any debt, liability, or obligation due to Debtor, the Reorganized Debtor, or their respective property; and (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.

**9.6.     Exculpation**.  From and after the Effective Date, neither Debtor, Reorganized Debtor, their respective professionals, nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability, including derivative claims, but excluding direct claims, to any Holder of a Claim or Equity Security or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act in connection with causing Debtor to act in its Chapter 11 Case from the Petition Date through the Effective Date, including the pursuit of confirmation of this Plan or any prior plan or the substantial consummation of this Plan, except for gross negligence and willful misconduct, and

in all respects shall be entitled to reasonably rely upon the advice of Debtor's counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.

**9.7.     Preservation of Litigation Claims.**  Nothing in the discharge, injunction, or exculpation provisions shall release, impair, or enjoin the prosecution of any Litigation Claims preserved by the Plan, whether or not listed on <u>Schedule 1.1.57</u>, which shall solely vest in the Reorganized Debtor on the Effective Date.

## 10. RETENTION OF JURISDICTION

**10.1.     Jurisdiction.**  Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and Debtor after the Effective Date to the maximum extent permitted by law, including, without limitation, jurisdiction to:

**10.1.1.**  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

**10.1.2.**  Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**10.1.3.**  Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor is party and to hear, determine, and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

**10.1.4.**  Insure that Distributions to Holders of Allowed Claims, or if applicable, Equity Securities are accomplished pursuant to the provisions of this Plan;

**10.1.5.**  Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving Debtor or Debtor's present or former Assets that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

**10.1.6.**  Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, expressly including an Effectuating Transaction, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**10.1.7.**  Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, or any Person's obligations incurred in connection with this Plan or the Confirmation Order;

**10.1.8.**  Modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code and <u>Section 11.1</u> of this Plan or modify any contract, instrument,

release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order or Debtor; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**10.1.9.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, or the Confirmation Order, except as otherwise provided herein;

**10.1.10.** Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**10.1.11.** Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

**10.1.12.** Enter the Final Decree;

**10.1.13.** Hear and decide Litigation Claims and continue to hear and decide pending Litigation Claims and any other claim or cause of action of Debtor; and

**10.1.14.** Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

**10.2. No Waiver.** Nothing contained in this <u>Article 10</u> shall constitute a waiver by any Person of the right to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this <u>Article 10</u>.

## 11. MODIFICATION AND AMENDMENT OF PLAN

**11.1. Modification and Amendment.** Prior to Confirmation, Debtor may alter, amend, or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time. After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, Debtor may, under Section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of Holders of Claims under this Plan.

# 12. MISCELLANEOUS

## 12.1. Objections to Claims and Disallowed Claims.

### 12.1.1. Authority to File Objections to Claims.
After the Effective Date, objections to Claims or Equity Securities shall be made and objections to Claims and Equity Securities made previous thereto shall be pursued by Reorganized Debtor or any other party properly entitled to do so after notice to Debtor and approval by the Bankruptcy Court. Any objections to Claims made after the Effective Date shall be filed and served not later than the first (1st) Business Day that is thirty (30) calendar days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

### 12.1.2. Resolution of Objections After Effective Date.
From and after the Effective Date, Reorganized Debtor may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court irrespective of whether Debtor or Reorganized Debtor was the Person that filed the objection.

### 12.1.3. Late-Filed Claims.
No Proof of Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Proofs of Claims are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or Proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

## 12.2. Disputed Claims Reserve.
To facilitate Distributions to Holders of Allowed Claims, and solely to the extent there are Disputed Claims in any Class, Reorganized Debtor shall set aside in the Disputed Claim Reserve an amount equal to the Distributions that would be paid on the Effective Date to the Holders of such Disputed Claims if such Disputed Claims were Allowed Claims, plus interest and fees as set forth in Section 4 of this Plan, pending the allowance or disallowance of such Disputed Claims. In the event Reorganized Debtor wishes to deposit or hold a lesser amount than required herein and is unable to reach an agreement with the Holder of the Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. Upon Final Order with respect to a Disputed Claim, the Holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, shall receive, as set forth in Section 4 of this Plan, or if not defined in Section 4, as soon as reasonably practicable after the claim becomes an Allowed Claim, that payment or Distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date.

## 12.3. Effectuating Documents; Further Transactions; Timing.
Debtor or Reorganized Debtor, as applicable, are both authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued, transferred, or canceled pursuant to this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. Debtor or Reorganized Debtor, as applicable, are both authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.4. Exemption from Transfer Taxes.** Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing including, without limitation, all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the issuance of the Equity Securities, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment

**12.5. Revocation or Withdrawal of this Plan.** Debtor reserves the right to revoke or withdraw this Plan at any time prior to its substantial consummation. If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**12.6. Binding Effect.** This Plan shall be binding upon, and shall inure to the benefit of Debtor, Reorganized Debtor, and the Holders of all Claims and Equity Securities and their respective successors and assigns notwithstanding whether or not such Holder (i) will receive or retain any property or interest in property under this Plan, (ii) has filed a proof of claim or interest in this Chapter 11 Case, or (iii) failed to vote to accept or reject the Plan or voted to reject the Plan.

**12.7. Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of Debtor and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California without giving effect to California's choice of law provisions.

**12.8. Modification of Payment Terms.** Debtor or the Reorganized Debtor, as applicable, reserve the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**12.9. Delivery of Distributions; Undeliverable Distributions.** Distributions to Holders of Allowed Claims and Equity Security Holders shall be made: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) at the addresses set

forth in any written notices of address changes delivered to the Debtor or the Reorganized Debtor, as applicable, after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Debtor or Reorganized Debtor has not received a written notice of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Nothing contained in this Plan shall require the Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim or Equity Security.

Any Person that fails to claim a Distribution returned as undeliverable within ninety (90) days from the date upon which a Distribution is first made to such Person shall forfeit all rights to any Distribution under the Plan. Persons that fail to claim the Distribution shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor, the Disputed Clim Reserve, the Reorganized Debtor, or against any Holder of an Allowed Claim to whom Distributions are made by the Reorganized Debtor. Undeliverable Distributions shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable Distribution under this Plan.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable Distribution expunged and shall be forever barred from asserting any such Claim against the Debtor, the Estate, the Reorganized Debtor, the Disputed Claims Reserve, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Reorganized Debtor, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Debtor or Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtor, the Estate, the Disputed Claims Reserve, the Reorganized Debtor, and their respective property. Any Distribution which is deemed nonnegotiable shall vest or revest in the Reorganized Debtor and be available for Distribution consistent with the Plan.

Subject to the terms of this Plan, undeliverable Distributions shall remain in the possession of the Reorganized Debtor until such time as a Distribution becomes deliverable.

**12.10. Set Offs.** Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim (before any Distribution is made on account of such Claim or Equity Security), claims of any nature whatsoever that Debtor may have against the Holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such Claim that it may have against such Holder.

**12.11.  Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid as follows:

| | |
|---|---|
| If to Debtor: | Try Trout and Industrial, LLC<br>Attn: Randolph F. Lamb<br>P.O. Box 2247<br>Menlo Park, CA 94026 |
| With a copy to: | Garman Turner Gordon LLP<br>Attn:    William M. Noall, Esq.<br>            Talitha Gray Kozlowski, Esq.<br>7251 Amigo St, Suite 210<br>Las Vegas, NV  89119<br>Tel:     (725) 777-3000<br>Email: wnoall@gtg.legal<br>            tgray@gtg.legal |
| With a copy to: | Menlo Law Group, PC<br>Attn: Jennifer Hagan, Esq.<br>1300 El Camino Real, Suite 100<br>Menlo Park, CA 94025<br>Tel:  (650) 322-8498<br>Email: jenniferh@menlolawpc.com |

**12.12.  Severability.**  If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of Debtor or the Reorganized Debtor, as applicable, shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.13.  Withholding and Reporting Requirements.**  In connection with this Plan and all instruments and securities issued in connection therewith and Distributions thereon, Debtor or the Reorganized Debtor, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Debtor or Reorganized Debtor, as applicable, shall be authorized to take any and all action that may be necessary to comply with such withholding and recording requirements.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has received a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax

obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such Distribution.

**12.14. Post-Confirmation Reporting.** Until the entry of the final decree closing the Chapter 11 Case, Debtor or the Reorganized Debtor, as applicable, shall comply with the Bankruptcy Code and Bankruptcy Rules post-confirmation reporting requirements. Additionally, Debtor or Reorganized Debtor, as applicable, shall file post-confirmation quarterly operating reports detailing receipts and disbursements (along with ending cash balance) for each calendar quarter from the date of confirmation until dismissal, conversion, or entry of a final decree closing the case no later than twenty (20) days after the expiration of the reported quarter.

**12.15. Cramdown.** In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, Debtor may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan. Debtor reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**12.16. Quarterly Fees.** Debtor or Reorganized Debtor, as applicable, shall pay all quarterly fees payable to the Office of the United States Trustee consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

DATED this 25th day of November, 2025.

**DEBTOR**

TRY TROUT AND INDUSTRIAL, LLC

/s/ _____

Randolph F. Lamb, Manager of Lamb Partners, LLC, Designated Representative

Prepared and submitted:

GARMAN TURNER GORDON LLP

By:  _/s/ Talitha Gray Kozlowski_
      WILLIAM M. NOALL, ESQ.
      TALITHA GRAY KOZLOWSKI, ESQ.
      7251 Amigo Street, Suite 210
      Las Vegas, Nevada 89119
      _Attorneys for Debtor_

German Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

26

**SCHEDULE 1.1.57**
**TO PLAN OF REORGANIZATION**

**CERTAIN PRESERVED POTENTIAL CAUSES OF ACTION**

All defined terms used herein shall have the meanings set forth in the Plan. The following is a non-exhaustive list of potential Litigation Claims for which Debtor may hold a claim or cause of action. Debtor reserve their right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so.

1.      The Avoidance Actions.

2.      All claims against Adam Cohen and Saxon Spencer Capital, Inc.

3.      Claims against Keith Dudam under Chapter 5 of the Bankruptcy Code resulting from the recordation of a judgment lien within the 90-day preference period.

4.      Any and all claims against Brett Mlinarich, James Lacey, and Matthew Costello, including, but not limited to breach of fiduciary duty, defamation of business, misappropriation of trade secrets and confidential information, conversion of confidential plans and financial records, tortious interference with contract, tortious interference with economic advantage, conspiracy to commit trade secret theft, violation of B&P Code 17200.

5.      Litigation Claims arising out of or in connection with Debtor's continuing business, property, or operations before or after the Effective Date.

6.      All other rights, privileges, claims, actions, or remedies of Debtor existing on the Effective Date, whether arising at law or in equity.

In addition to the possible causes of action and claims listed above, Debtor has or may have, in the ordinary course of their business, numerous causes of action and Claims or rights against contractors, subcontractors, vendors, suppliers, and others with whom it deals in the ordinary course of its business (the "Ordinary Course Claims"). With respect to all the Ordinary Course Claims and all other Litigation Claims, Debtor reserves for the benefit of Reorganized Debtor, the recipient of the Assets, the right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing). Debtor also has, or may have, and is retaining for the benefit of the Reorganized Debtor, various claims or causes of action arising under or pursuant to its insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Litigation Claims are not currently known or sufficiently known by Debtor. The failure to list any such unknown Litigation Claim herein is not intended to limit the right to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, Debtor expressly

reserves for the benefit of the Reorganized Debtor as the recipient of the Assets, all Litigation Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan. In addition, Debtor expressly reserve for the benefit of the Reorganized Debtor, the right to pursue or adopt any claims alleged in any lawsuit in which Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits. Debtor reserve for the benefit of the Reorganized Debtor only, all Ordinary Course Claims arising after the Effective Date.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE 6.1**
**PLAN OF REORGANIZATION**

**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

1.  The Broker Agreement, to the extent determined to be an Executory Contract.